**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **LALISA MYLES, as special administrator**<br>**of the estate of J.D. MYLES, deceased,** | ) <br> ) <br> ) | |
| **Plaintiff,** | ) <br> ) | |
| **vs.** | ) <br> ) | **Case No. 15 C 8804** |
| **MERCY HOSPITAL AND MEDICAL**<br>**CENTER, DR. FARZANA BEGUM and DR.**<br>**ROOP GUPTA, individually and as agents,**<br>**servants and/or employees of MERCY**<br>**HOSPITAL AND MEDICAL CENTER, and**<br>**WEXFORD HEALTH SOURCES, INC.,** | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | |
| **Defendants.** | ) <br> ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Lalisa Myles, as special administrator of the estate of her deceased husband,

J.D. Myles, has sued Mercy Hospital and Medical Center, Drs. Farzana Begum and

Roop Gupta (in their individual capacities and as agents of Mercy Hospital), and

Wexford Health Sources, Inc. For ease of understanding, the Court will refer to the

deceased by his first name (J.D.) and the plaintiff by her last name (Myles).

Myles alleges that negligence on the part of Mercy Hospital and Drs. Begum and

Gupta, and negligence and deliberate indifference of Wexford and its agent, Dr. D.

Williams, caused her late husband physical suffering, emotional trauma, and death.

She has brought deliberate indifference claims under 42 U.S.C. § 1983 against Wexford

and Dr. Williams (counts 1 and 3) and claims of medical negligence and wrongful death

under Illinois law against Wexford (count 2), Mercy Hospital (count 4), Dr. Begum (count 5), and Dr. Gupta (count 6). Myles has also asserted a claim of common law fraud against Mercy Hospital (count 7).

Mercy Hospital, Wexford, Dr. Begum, and Dr. Gupta have moved to dismiss Myles's claims against them. On March 24, 2016, the Court denied Wexford's motion to dismiss count 1 and Mercy Hospital's motion to dismiss count 7. For the reasons stated below, the Court denies the remainder of defendants' motions to dismiss.

## Background

The Court takes the following facts from Myles's complaint, accepting them as true for the purposes of the present motions. *See Dixon v. Cty. of Cook*, 819 F.3d 343, 346 (7th Cir. 2016). J.D. Myles was incarcerated in an Illinois prison when, after complaining of severe abdominal pain and hematemesis, he was admitted to Mercy Hospital on March 17, 2010 to be treated by Drs. Gupta and Begum. Dr. Gupta performed an endoscopy on J.D. the following day and discovered that he had a large stomach ulcer. Doctors took a biopsy and sent the sample to Mercy Hospital's pathology department for testing. J.D. was diagnosed with a peptic ulcer and discharged from Mercy Hospital on March 21, 2010. The next day—March 22, 2010—the pathology results came back indicating that J.D. had an invasive carcinoma. J.D. was no longer at the hospital when his results came back, and no one advised him that the test results showed that he had stomach cancer.

In fact, according to the complaint, J.D. left the hospital believing his biopsy results were normal, and he continued to believe this for over four years. From March 22, 2010 through August 13, 2014, neither Mercy Hospital nor Wexford ever delivered

J.D.'s test results or relayed his cancer diagnosis to him, despite the fact that Mercy Hospital "received one or more requests for [J.D.'s] medical records" during this time and Wexford "continued to treat [J.D.] for stomach pain and peptic ulcers throughout his incarceration." 3d Am. Compl., dkt. no. 41, ¶¶ 17–18. J.D. alleges that one reason he never learned his diagnosis was that while treating him, Wexford "failed to request a complete medical history or cumulative medical records" for him. *Id.* ¶ 18.

The complaint does not indicate that J.D. returned to Mercy Hospital between March 22, 2010 and August 13, 2014. On August 14, 2014, however, J.D. was admitted to Mercy Hospital again, this time for severe abdominal pain, vomiting, weight loss, and pain in his lower back. It was on this date, almost twenty-nine months after test results revealed the seriousness of his condition, that Mercy Hospital and its medical staff finally informed J.D. that he had cancer. On August 14, 2014, and for some time after being notified of his diagnosis, J.D. suffered extreme pain, loss of sleep, anxiety, and other physical and emotional trauma until he finally passed away on February 21, 2015.

As special administrator of his estate, J.D.'s wife Lalisa filed suit in the Circuit Court of Cook County on May 8, 2015, alleging medical negligence under the Illinois Wrongful Death Act against Mercy Hospital, Dr. Begum, and Dr. Gupta. On August 5, 2015, Myles filed her first amended complaint, in which she added a state law negligence claim and federal deliberate indifference claims against Wexford. Mercy Hospital moved to dismiss Myles's complaint the next day, and the state court allowed this to stand as a motion to dismiss Myles's first amended complaint. Rather than respond to the motion to dismiss, Myles moved to file a second amended complaint on

September 9, 2015. The state court denied Myles leave to amend but allowed her to serve limited discovery upon Mercy Hospital to learn about correspondence and contacts between J.D. and Mercy Hospital reflected in medical records. Wexford removed the case to federal court on October 5, 2015. Myles filed a second amended complaint on December 9, 2015, adding allegations that Wexford, by and through its agent Dr. Williams, was deliberately indifferent to J.D.'s medical needs and that Mercy Hospital perpetrated a fraud.

Myles's third amended complaint sets forth seven claims for relief. Myles asserts two claims under 42 U.S.C. § 1983 against Wexford (count 1) and its agent, Dr. Williams (count 3), alleging that they were deliberately indifferent to J.D.'s health and well-being. She also asserts claims of medical negligence and wrongful death under the Illinois Wrongful Death Act, 740 ILCS 180/1, against Wexford (count 2), Mercy Hospital (count 4), Dr. Begum (count 5), and Dr. Gupta (count 6). Finally, in count 7, Myles asserts a common law fraud claim against Mercy Hospital.

Each of the defendants has moved to dismiss Myles's claims against it. In a minute order entered March 24, 2016, the Court denied Wexford's motion as to count 1 and Mercy Hospital's motion as to count 7. *See* dkt. no. 54. The Court also denied Mercy Hospital's motion with respect to its argument that count 4 should be dismissed for failure to file the affidavit and health professional's report required under 735 ILCS 5/2–622. *See id.*

### Discussion

Mercy Hospital, Wexford, and Dr. Begum have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. They contend that the

4

statute of repose applicable to medical negligence claims in Illinois bars Myles's suit, and Wexford argues that Myles has not leveled a cognizable claim against it because she has failed to identify medical professionals in Wexford's employ who rendered inadequate medical care within the repose period. In addition, Mercy Hospital, Wexford, and Dr. Begum argue that Myles's complaint should be dismissed because the affidavit and medical reports she submitted are insufficient.

Drs. Begum and Gupta have also moved to dismiss counts 5 and 6, respectively, under Federal Rule of Civil Procedure 12(b)(5) based on Myles's failure to diligently serve them with process within the appropriate time period and at the correct location in compliance with Illinois Supreme Court Rule 103(b) and Federal Rule of Civil Procedure 4(e) and (m). They ask that dismissal be granted with prejudice due to the expiration of the relevant limitations and repose periods.

**A.    Failure to state a claim**

When considering a motion to dismiss for failure to state a claim, the Court accepts the facts stated in the complaint as true and draws reasonable inferences in favor of the plaintiff. *Bonnstetter v. City of Chicago*, 811 F.3d 969, 973 (7th Cir. 2016). To state a viable claim, a plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Myles alleges that doctors discovered J.D.'s cancer when his test results came back on March 22, 2010 and failed to disclose the results to him until August 14, 2014.

Myles did not file suit until May 8, 2015, just over five years after J.D.'s test results came back to doctors at Mercy Hospital. Illinois law provides that all medical malpractice claims are subject to a two-year statute of limitations and a four-year statute of repose. *See* 735 ILCS 5/13–212. Wexford, Mercy Hospital, and Dr. Begum have moved to dismiss counts 2, 4, and 5, respectively, on the grounds that Myles failed to file suit within the applicable repose period.

Under section 13–212, a plaintiff may sue for medical negligence up to two years after discovering his cause of action, as long as he brings suit within four years of the "act or omission or occurrence alleged in such action to have been the cause of such injury." *Id.* Unlike the limitations period, which is tolled until the plaintiff discovers or reasonably should have discovered the existence of his cause of action, the statute of repose is concerned only with the defendant's conduct. "[T]he distinction between the repose period and the limitations period is that the repose period is triggered by defendant's wrongful act or omission that causes the injury, whereas the limitations period is triggered by the patient's discovery of the injury." *Turner v. Nama*, 294 Ill. App. 3d 19, 25, 689 N.E.2d 303, 307 (1997). "The purpose of the repose period is to terminate the possibility of liability after a defined period of time, regardless of a potential plaintiff's lack of knowledge of his cause of action." *Ferrara v. Wall*, 323 Ill. App. 3d 751, 755, 753 N.E.2d 1179, 1181 (2001). "Although the statute of repose causes harsh consequences in some cases, the legislature intended to curtail the increased exposure to malpractice actions brought about by the advent of the discovery rule by placing a time limit within which a malpractice action must be commenced." *Id.*, 753 N.E.2d at 1182.

6

Illinois courts have identified two exceptions to section 13–212. The first is set forth in section 13–215, which provides that "[i]f a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years" of the prospective plaintiff discovering he possesses that cause of action. 735 ILCS 5/13–215. The second is found in the "ongoing course of continuous negligent medical treatment" doctrine established in *Cunningham v. Huffman*, 154 Ill. 2d 398, 405, 609 N.E.2d 321, 325 (1993). Interpreting the legislature's use of the phrase "act or omission or occurrence" in section 13–212, the Illinois Supreme Court in *Cunningham* found it "improbable that the General Assembly intended the word 'occurrence' to be limited to a single event." *Id.* The court determined that because "absurd and unjust results" would otherwise accrue, "[w]hen the cumulative results of continued negligence is the cause of the injury, the statute of repose cannot start to run until the last date of negligent treatment." *Id.*

Thus under *Cunningham*, "a plaintiff is not barred by the statute of repose if she can demonstrate that there was an ongoing course of continuous *negligent* medical treatment." *Id.* at 406, 609 N.E.2d at 325. To establish an ongoing course of continuous negligent medical treatment, "a plaintiff must demonstrate: (1) that there was a continuous and unbroken course of *negligent* treatment, and (2) that the treatment was so related as to constitute one continuing wrong." *Id.* Myles contends that her complaint sets forth allegations that, if proven true, would show that the defendants provided a continuous and unbroken course of negligent treatment for his persistent stomach pain and suffering associated with the cancer he had and did not know about.

Relying on *Turner* and *Ferrara*, defendants argue that failure to notify a patient of test results that reveal a serious medical condition does not constitute an ongoing course of continuing negligent medical treatment. Defendants point out that the Illinois Appellate Court has determined that "failure to ensure that decedent was notified of her unfavorable test results [does not] amount[] to an 'ongoing course of negligent medical treatment.'" *Turner*, 294 Ill. App. 3d at 30, 689 N.E.2d at 311. This is because "the scope of the 'ongoing course of continuous negligent medical treatment' doctrine has been construed to include only those acts or omissions that occur within the affirmative event of treatment." *Id.* at 32, 689 N.E.2d at 312 (citing *Ogden v. Gallagher*, 591 A.2d 215, 220 (Del. 1991)). Put differently, "the failure to notify a patient of abnormal test results, without any subsequent affirmative medical treatment, cannot constitute a continuing course of negligent medical treatment under *Cunningham*." *Ferrara*, 323 Ill. App. 3d at 757, 753 N.E.2d at 1183.

*Turner* and *Ferrara*, however, presented a different question from the one presented here. In *Turner*, the plaintiff alleged that the doctor-defendant administered a Pap smear in September 1990 that tested positive for carcinoma. *Turner*, 294 Ill. App. 3d at 22, 689 N.E.2d at 305. The plaintiff alleged that the defendant failed to notify her of her test results and continued to neglect her duty to share the test results for several years. *Id.* at 23, 689 N.E.2d at 306. Plaintiff argued that this duty required the defendant to make an effort every month and a half (until December 1993, when she ceased to be a patient of the defendant) to relay the results to her. *Id.* The plaintiff brought suit against the defendant in April 1995, roughly four-and-a-half years after the defendant learned of the abnormal test result. *Id.* at 22, 689 N.E.2d at 306. In

response to defendant's motion to dismiss based on the expiration of the repose period, the plaintiff argued that the defendant provided an ongoing course of continuous negligent medical treatment by continuing to fail to disclose the test results throughout the time that the plaintiff was the defendant's patient. In other words, plaintiff argued that the continuous negligent medical treatment at issue was her doctor's continuous failure to reach out to her and alert her to her test results.

The court rejected the plaintiff's argument. It examined the meanings of the words "medical" and "treatment" and determined that "'medical treatment' is an affirmative event involving application of medical expertise." *Id.* at 30, 689 N.E.2d at 311. The court explained that failing to notify upon receipt of test results, without more, included no "affirmative event," and "any characterization of the obligation to notify as inherently 'medical' is misplaced" because "the obligation requires only ordinary judgment—not medical judgment." *Id.* at 32, 689 N.E.2d at 312.

The court in *Ferrara* adopted the reasoning of *Turner* under similar circumstances. In *Ferrara*, the plaintiff underwent a prostate specific antigen (PSA) test in June 1993 that revealed he had an abnormally high PSA level. The plaintiff's doctor received the results a week after conducting the test but did not reveal them until administering another PSA test in October 1995. A different physician diagnosed the plaintiff with prostate cancer a month later, and a month after that the plaintiff underwent a radical retropubic prostatectomy. Because the plaintiff did not bring suit against the first physician until June 1998, the physician moved to dismiss on the grounds that the statute of repose in section 13–212 barred the plaintiff's claim. *Ferrara*, 323 Ill. App. 3d at 753, 753 N.E.2d at 1180. The court found *Turner* "directly on point," explaining that

"the omission that resulted in the plaintiff's injury was the defendant's failure to communicate the results of the PSA test results after he received them [in June 1993]." *Id.* at 757, 753 N.E.2d at 1183. It continued:

> We agree with the *Turner* court's reasoning that the failure to notify a patient of abnormal test results, without any subsequent affirmative medical treatment, cannot constitute a continuing course of negligent medical treatment under *Cunningham*. We believe that the repose period in the instant case was triggered at the time that the defendant received the abnormal test results and failed to communicate them to the plaintiff. This omission was the act that was the cause of the plaintiff's alleged injuries.

*Id.*

Unlike the plaintiffs in *Turner* and *Ferrara*, Myles does not allege that defendants engaged in an ongoing course of continuing negligent medical treatment by simply neglecting their continuing obligation to report J.D.'s test results. She does not allege malpractice on the basis of one single failure to deliver abnormal test results in March 2010, nor does she allege that her treating physicians continued to negligently treat J.D. by either purposefully or carelessly withholding his results in spite of their duty to communicate them. Instead, Myles alleges that from the time Drs. Begum and Gupta received J.D.'s test results after treating J.D. at Mercy Hospital in 2010 until he learned of his cancer diagnosis in August 2014, he continued to receive treatment from Wexford's medical staff. Myles alleges that Dr. Williams and other Wexford medical personnel continued to treat J.D. for his stomach pains and sickness throughout this time. She claims that Wexford personnel worked in tandem with Mercy Hospital and "its agents, servants and / or employees"—including Drs. Gupta and Begum—by requesting J.D.'s comprehensive medical records in order to care for him effectively. Myles alleges that Wexford's requests were inadequate and that Mercy Hospital and its agents

neglected their professional obligations by failing to respond.

Evidence adduced through discovery may show that the only contact Mercy Hospital, Dr. Begum, and Dr. Gupta had with J.D. or with the Wexford medical staff that treated him after his first hospital visit occurred when they administered his endoscopy on March 21, 2010. It may reveal that J.D. did not continue to receive treatment from Wexford from March 2010 through August 2014 or that although he received treatment, his condition or symptoms did not reasonably require Wexford to request, review, and report J.D.'s comprehensive medical records. If the evidence were to show this, Myles's case would look a good deal like *Turner* and *Ferrara*: a plaintiff seeking to hold medical professionals accountable for a single negligent act that occurred more than four years before the lawsuit was filed.

At this juncture, however, the Court must accept the allegations in the complaint as true and draw reasonable inferences in Myles's favor. A court may dismiss a complaint in which the plaintiff "pleads himself out of court by 'admit[ting] all the ingredients of an impenetrable defense,'" *Covington v. Mitsubishi Motor Mfg. of Am., Inc.*, 154 F. App'x 523, 524–25 (7th Cir. 2005) (quoting *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004)), including where the complaint "plainly reveals that [the] action is untimely under the governing statute of limitations." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). But "[i]n such cases, the validity of the defense must be 'apparent from the complaint itself' and 'unmistakable.'" *Covington*, 154 F. App'x at 525 (quoting *Walker v. Thompson*, 288 F.3d 1005, 1010 (7th Cir. 2002)). Myles's complaint does not unmistakably admit the ingredients of an impenetrable defense, for the complaint raises the plausible inference that the

defendants repeated their negligence on at least one occasion within the repose period by failing to report J.D.'s adverse test results when they were requested and needed for that occasion's treatment to meet professional standards.

This is also the problem with Wexford's argument that count 2 must be dismissed based on Myles's failure to "identify *by name* the alleged agents, employees or unknown medical personnel alleged to give rise to vicarious liability." Wexford's Memo., dkt. no. 48, at 9–10. Wexford contends that Myles failed to identify Wexford's agents by name, "except for one individual who treated Plaintiff in 2010 and is barred by the statute of limitations." *Id.* at 10. Myles does not in fact allege that Dr. Williams negligently treated J.D. only in 2010. Rather, she alleges that Dr. Williams was Wexford's agent and rendered substandard care on Wexford's behalf throughout the time period bookended by J.D.'s visits to Mercy Hospital in March 2010 and August 2014. Myles has sufficiently alleged a claim for medical negligence against Wexford arising out of its agent's acts and failures to act, and she has plausibly alleged that at least one occurrence giving rise to liability took place within the limitations and repose periods.

Finally, Wexford, Mercy Hospital, and Dr. Begum argue that even if the statute of repose does not bar Myles's action, Myles has nonetheless failed to state a claim because she failed to file documents that must be submitted in medical malpractice cases pursuant to Illinois law. The Illinois Healing Art Malpractice Act provides that in any action for damages "by reason of medical, hospital, or other healing art malpractice," a plaintiff must file an affidavit stating that the affiant has reviewed the facts with a knowledgeable and qualified "health professional" who practices in the

particular field and that the health professional has determined in a written report "that there is a reasonable and meritorious cause" for the filing of the lawsuit. 735 ILCS 5/2–622(a). A copy of the health professional's written report must also be included. *Id.* Failure to satisfy this requirement is grounds for dismissal, even in federal court. *See, e.g.*, *Smith v. Walton*, No. 14 C 514 JPG SCW, 2015 WL 5062510, at *1 (S.D. Ill. Aug. 26, 2015); *Ortiz v. United States*, No. 13 C 7626, 2014 WL 642426 (N.D. Ill. Feb. 19, 2014); *Williams v. Erickson*, 21 F. Supp. 3d 957, 958–59 (N.D. Ill. 2013) (Kennelly, J.); *Warren ex rel. Warren v. Dart*, No. 09 C 3512, 2010 WL 4883923 (N.D. Ill. Nov. 24, 2010). Myles attached to her original complaint in state court a section 2-622 health professional's report. *See* Pl.'s Ex. 1, dkt. no. 60-1, at 11–12. She did not, however, append similar documents to her amended complaints in federal court, which prompted Mercy Hospital, Wexford, and Dr. Begum to move for dismissal based on Myles's failure to comply with section 2-622.

The Court granted Myles leave to file reports of reviewing healthcare professionals, and Myles filed an affidavit and four medical reports on April 14, 2014, several days after Mercy Hospital, Wexford, and Dr. Begum had already moved for dismissal. Myles contended in her responses to the defendants' motions that their arguments about whether she complied with section 2-622 were moot in light of her subsequent filing. Dr. Begum seems to have withdrawn her argument about the healthcare report, for she has not raised it in her reply memorandum. Even if she had not abandoned it, her argument would lack merit. Dr. Begum argued that Myles failed to provide documentation regarding Dr. Begum's negligence, but Myles did precisely that in her mid-April submission. *See* Pl.'s Ex. 4, dkt. no. 60-4, ¶¶ 8–12.

As indicated above, on March 24, 2016, the Court denied Mercy Hospital's motion to dismiss count 4 to the extent Mercy Hospital sought dismissal based on the sufficiency of Myles's required health professional's affidavit. In its reply brief submitted on May 20, 2016, however, Mercy Hospital persists in arguing that count 4 should be dismissed because Myles's "health professional fails to conclude in the report that there is a reasonable and meritorious cause for filing this action, as required by Section 2–622 [of the Illinois Code of Civil Procedure]." Mercy Hosp.'s Reply, dkt. no. 86, at 7. Wexford, too, argues that Myles's health professional report is deficient because it fails to state that Wexford provided substandard care and proximately caused harm, and because it lacks a physician's certification that a meritorious cause of action against Wexford exists.

Mercy Hospital contends that the medical report Myles submitted is inadequate because it does not expressly state that the reviewing physician believes Myles has a "reasonable and meritorious cause" for bringing suit. This argument lacks merit. In the reviewing healthcare professional report Myles has submitted concerning Mercy Hospital, a board-certified physician states that he reviewed medical records from the hospital and determined that "the nurses, doctors and medical staff at Mercy Hospital breached the standard of care for similar medical practitioners by failing to contact the patient and to make more serious attempts at notifying the patient of his true diagnosis." Pl.'s Ex. 3, dkt. no. 60-3, ¶ 11. He states that it is his opinion "that the above referenced deviations were the causes of Mr. J.D. Myles's injuries, progression of the cancer, pain, suffering, and death." *Id.* ¶ 12. The physician does not use the words "reasonable and meritorious cause for filing this action." But Mercy Hospital has cited no authority for the

proposition that such magic words are necessary where, as here, the opinions the doctor has stated clearly indicate that he believes there are reasonable and meritorious grounds for suit.

Wexford's argument also fails. Wexford contends that Myles has not submitted a reviewing physician's report indicating that a qualified healthcare professional has determined Wexford breached its duty of care and caused J.D. harm but rather has submitted a report indicating that Illinois Department of Corrections (IDOC) medical staff committed acts of medical negligence that caused J.D.'s suffering. But this argument essentially ignores Myles's contention that it is Wexford that provides medical services for IDOC. It also ignores that the reviewing physician refers in his report to treatment provided to J.D. by "Dr. David / Dr. D. Williams," *see* Pl.'s Ex. 2, dkt. no. 60-2, ¶ 4, who, according to Myles, treated J.D. as a medical professional acting on Wexford's behalf. And contrary to Wexford's assertion that the report concerns IDOC medical staff, the report in fact indicates that the reviewing physician believes physicians *at IDOC medical facilities* failed to exercise due care, and it points to Wexford's doctors and nurses as the medical personnel that worked in such IDOC medical facilities and provided deficient medical care to J.D.

Myles has filed a sufficient affidavit and adequate reports from reviewing physicians as required under 735 ILCS 5/2–622(a), and she has done so as to each of the four defendants she has sued.

For these reasons, the Court denies defendants' motions to dismiss counts 2, 4, and 5 for failure to state a claim.

**B.     Insufficient service of process**

Drs. Begum and Gupta have moved to dismiss under Federal Rule of Civil Procedure 12(b)(5) for failure to obtain service of process.  Dr. Gupta admits that he was served with process at his home address on December 30, 2015 but contends that Myles inexcusably failed to obtain service within the limitations period.  He argues that Illinois Supreme Court Rule 103(b) applies in this case and requires the Court to dismiss with prejudice Myles's claim against him.  Dr. Begum contends that even to this day, Myles has not sufficiently served her with process.  Dr. Begum also argues that both Illinois Supreme Court Rule 103(b) and Federal Rule of Civil Procedure 4(m) require dismissal with prejudice in light of Myles's failure to obtain service within the applicable limitations period.

In a case removed to federal court, state service-of-process rules must be followed prior to removal and federal service-of-process rules apply after removal. Both federal and Illinois law place the burden on the plaintiff to ensure that each defendant is served with process in compliance with the law.  Illinois statute provides two permissible means of serving process in civil cases like this one.  First, a plaintiff may "leav[e] a copy of the summons with the defendant personally."  735 ILCS 5/2–203(a).  Second, a plaintiff may "leav[e] a copy at the defendant's usual place of abode, with some person of the family or a person residing there, of the age of 13 years or upwards, and informing that person of the contents of the summons" if the person making service also "send[s] a copy of the summons in a sealed envelope with postage fully prepaid, addressed to the defendant at his or her usual place of abode."  *Id.*

Federal Rule of Civil Procedure 4 requires a plaintiff to serve each defendant with

a summons and a copy of the plaintiff's complaint against that defendant. Fed. R. Civ. P. 4(c)(1). Service is effective if the plaintiff (a) follows the local state law for serving a summons; (b) delivers a copy of the summons and complaint to the defendant personally; (c) "leav[es] a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there"; or (d) delivers the summons and complaint to the defendant's authorized or appointed agent. Fed. R. Civ. P. 4(e).

Under the version of Rule 4(m) applicable in this case, a plaintiff must accomplish service of process within 120 days of filing unless she can show good cause for being unable to do so. Fed. R. Civ. P. 4(m) (2015) (amended Dec. 1, 2015). If the plaintiff fails to effect service within 120 days or demonstrate good cause, the Court may dismiss her suit. *Id.* "The same 120-day period applies where suits are removed to federal court from state court, except that the period commences upon the date of removal." *Cardenas v. City of Chicago*, 646 F.3d 1001, 1004 (7th Cir. 2011). When a defendant moves to dismiss for failure to obtain service of process, "[t]he plaintiff bears the burden to demonstrate that the district court has jurisdiction over each defendant through effective service." *Id.* at 1005. "If . . . the district court finds that the plaintiff has not met that burden and lacks good cause for not perfecting service, the district court must either dismiss the suit or specify a time within which the plaintiff must serve the defendant." *Id.*

Rule 4(m) vests district courts with broad discretion to determine whether to dismiss a plaintiff's complaint or to grant the plaintiff more time to serve the defendant. *See id.* at 1004. Illinois Supreme Court Rule 103(b), however, is not so flexible. Under

Rule 103(b), a court is permitted to dismiss an action without prejudice "[i]f the plaintiff fails to exercise reasonable diligence to obtain service on a defendant prior to the expiration of the applicable statute of limitations." ILCS S. Ct. R. 103(b). If, on the other hand, "the failure to exercise reasonable diligence to obtain service on a defendant occurs after the expiration of the applicable statute of limitations," the court is required to dismiss the action with prejudice as to that defendant. *Id.* Rule 103(b) sets forth that "[i]n considering the exercise of reasonable diligence, the court shall review the totality of the circumstances." *Id.* Factors a court may consider in making this determination include (1) how long it took for the plaintiff to obtain service; (2) the plaintiff's activities; (3) the plaintiff's knowledge of the defendant's location; (4) the degree of difficulty facing the plaintiff in ascertaining the defendant's whereabouts; (5) whether the defendant had actual knowledge of the pendency of the action; (6) special circumstances that would affect the plaintiff in her efforts to obtain service; and (7) whether actual service was eventually made. *Segal v. Sacco*, 136 Ill. 2d 282, 287, 555 N.E.2d 719, 720 (1990). "These factors must be considered in light of the purpose of Rule 103(b)," *id.* at 287, 555 N.E.2d at 721, which "is to protect defendants from unnecessary delay in the service of process on them and to prevent the circumvention of the statute of limitations." *Id.* at 286, 555 N.E.2d at 720.

For the purposes of this case, it does not matter whether the Court applies federal Rule 4(m) or Illinois Rule 103(b), because the complaint plausibly alleges that the defendants perpetrated negligent wrongdoings within the limitations period. As explained in the previous section, the allegations permit the plausible inference that Wexford, Mercy Hospital, and doctors working for both—including Drs. Begum and

Gupta—were engaged in ongoing treatment during which J.D. and his treating physicians sought to receive his medical records in order to effectively treat his ongoing stomach issue. The complaint alleges that on at least one occasion prior to August 2014 but after he visited Mercy Hospital in 2010, Mercy Hospital and its agents (of whom he alleges Drs. Begum and Gupta were two) participated in his care remotely and failed to disclose his test results when asked for them. Drawing all reasonable inferences in favor of Myles, the limitations period has not yet expired. If, for example, Myles received treatment on August 13, 2014—the day before he returned to Mercy Hospital and finally learned of his condition—in which doctors needed but did not or could not obtain his records, the limitations period expires no sooner than August 13, 2016.

For this reason, the Court denies Dr. Gupta's motion to dismiss count 6 under Rule 12(b)(5). Dr. Gupta admits that Myles effected service of process on him in December 2015, a full nine months prior to the last date the limitations period could plausibly run in light of the allegations in the complaint. Even accepting Dr. Gupta's argument that Myles failed to exercise reasonable diligence in obtaining service on him, Rule 103(b) provides that where such failure occurs within the limitations period, a court "may" dismiss the action; like federal Rule 4(m), the decision as to whether an action should be dismissed for inadequate service during the limitations period under Rule 103(b) "is within the sound discretion" of the Court. *Emrikson v. Morfin*, 2012 IL App (1st) 111687 ¶ 13, 977 N.E.2d 1165, 1168. The Court declines to dismiss Myles's complaint in light of the fact that Dr. Gupta has knowledge of this action, has been sufficiently served, was not prejudiced by Myles's delay, and is in an adequate position

to defend himself as this litigation progresses.

Dr. Begum's Rule 12(b)(5) motion is slightly different.  Dr. Begum contends that to this day, Myles has not sufficiently served her with process.  According to Dr. Begum, after Myles filed her complaint on May 8, 2015, she waited seven months before attempting to serve Dr. Begum with process.  When Myles's attempts failed, she delayed two more months before attempting again by leaving a summons and a copy of her third amended complaint with Dr. Begum's nephew at Dr. Begum's former residence.  Dr. Begum argues that because Myles did not exercise reasonable diligence in obtaining service, count 5 should be dismissed.  She also contends that even if Rule 4(m) applies rather than Supreme Court Rule 103(b), count 5 should be dismissed because the first attempt Myles made to effectuate service was five months after the case was removed to federal court.

Myles argues that she exercised reasonable diligence in attempting to serve Dr. Begum.  She contends that the significant lapses of time between filing her complaints and attempting service on Dr. Begum do not evidence lack of diligence on her part but instead evidence obfuscation on the part of Mercy Hospital, which she says repeatedly evaded her requests for Dr. Begum's contact information.  Myles also argues that Dr. Begum likely had actual knowledge of this suit because Mercy Hospital had knowledge of it, and it is not plausible that Mercy Hospital did not inform its agent who was named in the complaint that a lawsuit was pending.  Myles notes that because Dr. Begum has an appearance on file and the litigation has not advanced much past the starting blocks, Dr. Begum has not been prejudiced by the delay in obtaining service.  Myles also contends that Dr. Begum has already been served with process because the summons

and complaint were left with a person of suitable age at an address identified as hers in an affidavit Dr. Begum signed.

Myles has not exercised reasonable diligence in serving Dr. Begum. Myles's first attempt at effectuating service once this case was removed to federal court occurred five months after removal, an inordinately long time and far longer than the 120 days federal Rule 4(m) permitted at the time. Even if Mercy Hospital made discovering Dr. Begum's contact information difficult, this does not excuse Myles's failure to ask the Court for more time to effectuate service. The Court also rejects the notion that Dr. Begum must have had actual knowledge of this suit in light of Mercy Hospital having actual knowledge of it. Myles cites no authority for the proposition that after a plaintiff has properly served a defendant, a court should assume that the defendant's alleged agents have actual knowledge of the suit. And, as Dr. Begum points out, discovering her contact information and hiring a process server to ensure expedient service of process likely would have been relatively easy. The Court sees no reason why it took so long for Myles to even attempt service, nor can the Court understand why Myles has not attempted to perfect service in light of Dr. Begum's claimed change of address.

Because both state and federal rules permit the Court to exercise its discretion in determining how to proceed where the plaintiff fails to adequately obtain service but the limitations period still runs, the Court declines to dismiss Myles's claim against Dr. Begum at this time. Myles must, however, serve Dr. Begum with a summons and a copy of her third amended complaint in full compliance with Federal Rule of Civil Procedure 4(e) within the next twenty-one days (unless Dr. Begum evades service or is

not reasonably available).[1]  If she fails to do so, her claim against Dr. Begum will be dismissed with prejudice.

## Conclusion

For the foregoing reasons, the Court denies defendants' motions to dismiss [dkt. nos. 43, 45, 47, 57].  The Court directs Mercy Hospital to answer count 4, Wexford to answer count 2, and Dr. Gupta to answer count 6 of Myles's Third Amended Complaint by no later than August 4. 2016.  Myles is directed to serve Dr. Begum with a summons and a copy of her third amended complaint by no later than August 4, 2016.  If Myles effectively obtains service by that date, Dr. Begum will be required to answer the Third Amended Complaint by August 18, 2016.

The case is set for a status hearing on August 1, 2016 at 10:30 a.m. for the purpose of setting a discovery and pretrial schedule.  Counsel are directed to discuss and attempt to agree upon a schedule to propose to the Court and are to file a joint status report in this regard by no later than July 28, 2016.



_____
MATTHEW F. KENNELLY
United States District Judge

Date:  July 14, 2016

---

[1] In light of the Court's decision to overrule Dr. Begum's request for dismissal with prejudice, the Court urges Dr. Begum's counsel to consider accepting service on behalf of the doctor, without prejudice to the arguments the Court has rejected for dismissal with prejudice.